## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **G. RAYMOND COOK,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 1:04-2406** |
| **v.** | : | **(CONNER, D.J.)** |
| | | **(MANNION, M.J.)** |
| **JO ANNE B. BARNHART,** | : | |
| **Commissioner of Social** | | |
| **Security,** | : | |
| **Defendant** | : | |

## REPORT AND RECOMMENDATION

The record in this action has been reviewed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to determine whether there is substantial evidence to support the Commissioner's decision denying the plaintiff's claims for Social Security Disability Insurance Benefits, ("DIB"), and Supplemental Security Income, ("SSI"), under Titles II and XVI of the Social Security Act ("Act"), respectively.  42 U.S.C. §§ 401-433, 1381-1383f (2004).

Based upon a review of the record, it is recommended that the plaintiff's appeal from the decision of the Commissioner of Social Security, (Doc. No. 1), be **DENIED**.

## I.  Procedural Background

The plaintiff filed applications for DIB and SSI on February 26, 2003, alleging disability since February 18, 1999 due to high blood pressure, severe

chronic depression, debilitating lumbar pain, and bilateral biceps tendinitis. (TR. 17).  His applications were denied initially and a hearing was held before an administrative law judge ("ALJ") on February 10, 2004.  The plaintiff and a vocational expert ("VE") testified. (TR. 35).  On April 28, 2004, the ALJ issued a decision denying the plaintiff's disability claims. (TR. 16).

The plaintiff filed a request for review of the ALJ's Decision. (TR. 11). On September 24, 2004, the Appeals Council denied the request. (TR. 5). Thus, the ALJ's decision became the final decision of the Commissioner. 42 U.S.C. § 405(g).

Currently pending is the plaintiff's appeal, filed on November 3, 2004, of the Commissioner's decision.  (Doc. No. 1).

## II. Disability Determination Process

A five-step process is required to determine if an applicant is disabled. The Commissioner must sequentially determine:  (1) whether the applicant is engaged in substantial gainful activity; (2) whether the applicant has a severe impairment; (3) whether the applicant's impairment meets or medically equals a listed impairment; (4) whether the applicant's impairment prevents the applicant from doing past relevant work; and (5) whether the applicant's impairment prevents the applicant from doing any other work.  20 C.F.R. §§ 404.1520, 416.920.

The instant action was ultimately decided at the fifth step of the process,

2

when the ALJ concluded that, considering the plaintiff's age, educational background, work experience, and residual functional capacity ("RFC"), he was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (TR. 24).

At issue is whether there exists substantial evidence to support the ALJ's decision.

## III.  The ALJ's decision

Using the above-outlined procedure, the ALJ found that: 1) the plaintiff had not engaged in substantial gainful activity since the alleged onset of disability; 2) the plaintiff's degenerative disc disease and depression, in combination, were considered "severe," based on the requirements in 20 C.F.R. §§ 404.1520(c) and 416.920(b); but, 3) did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4; 4) the plaintiff had the RFC for unskilled light work that involved only occasional stooping, kneeling, crouching, balancing, and no climbing or crawling and he was unable to perform any of his past relevant work, 20 C.F.R. §§ 404.1565, 416.965, and; 5) the plaintiff had the RFC to perform a significant range of light work, 20 C.F.R. §§ 404.1567, 416.967.  (TR. 18-19).

The ALJ determined, by applying Medical-Vocational Rule 202.14, that, although the plaintiff's exertional limitations did not allow him to perform the full range of light work, there were a significant number of jobs in the national

economy that the plaintiff could perform.  (TR. 23-24).  Examples of such jobs included work as a small parts assembler (300 jobs in the regional economy), cashier (9,000+ jobs regionally), machine tender (300-400 jobs regionally), counter attendant (300 jobs regionally), and clerical worker (200 jobs regionally).  (TR. 24).  The VE testified that these jobs existed in significantly greater numbers in the national economy. (TR. 24).  20 C.F.R. §§ 404.1520(f), 416.920(f).  Thus, the ALJ determined that the plaintiff was not disabled under the Act. (TR. 24-25).  20 C.F.R. §§ 404.1520(f), 416.920(f)).

The ALJ also found that the plaintiff was not totally credible with respect to his allegations about the severity of his limitations. (TR. 21).  The ALJ noted that the plaintiff was an "individual closely approaching advanced age," 20 C.F.R. §§ 404.1563, 416.963, with "more than a high school education." (TR. 23).

Finally, the ALJ determined that *res judicata* precluded him from considering whether the plaintiff was disabled prior to August 28, 2002.  (TR. 17).  On August 14, 2001, the plaintiff had filed applications for DIB and SSI, alleging disability since February 18, 1999.[1] (TR. 16).  Those applications had been denied at the hearing level in a August 27, 2002 decision. (TR. 17).  The Appeals Council had denied the plaintiff's request for review and the plaintiff had sought judicial review in the United States District Court for the Middle

---

[1] The plaintiff had previously filed applications for DIB and SSI on December 29, 1999.  Those applications were denied on November 13, 2000 and the plaintiff did not appeal further.  (TR. 16).

4

District of Pennsylvania.  The ALJ noted that the plaintiff's civil action in this Court was pending at the time of his April 28, 2004 decision.  (TR. 17).  Since then, this Court has affirmed the Commissioner's August 27, 2002 decision which held that the plaintiff was not disabled, making the Commissioner's decision final.  *Cook v. Barnhart*, Civil Action No. 3:CV-03-0959  (M.D.P.A. September 14, 2004).  42 U.S.C. § 405(g).

## IV.  Evidence of Record

The plaintiff was fifty-two years old at the time of the hearing and had an "above high school education."  (TR. 25, 17, 39).    He had past work experience as a pipe fitter, a truck driver, and a nurse's aide.  (TR. 17).

The plaintiff was seen by his treating physician, Valerie Weber, M.D. several times between August 28, 2002, the date from which, as noted above, the ALJ determined the issue of disability, and February 10, 2004, the date of the hearing.  (TR. 35, 170-73, 177-79, 194-95, 219-30).  In July 2002, Dr. Weber reported that the plaintiff was in no acute distress and that medications were controlling his pain.  (TR. 177-78).  In March 2003, Dr. Weber reported that the plaintiff "look[ed] well" and that his pain control, which consisted of a Duragesic patch and Tylenol, was "good."  (TR. 171).[2]  The plaintiff told Dr. Weber that he had not been to the pain clinic since September 2002.  (TR.

---

[2] Although the ALJ indicated that the plaintiff saw Dr. Weber for a sore throat in October 2002, the plaintiff actually saw another physician, Robert Hergan, M.D.  (TR. 175-76).

5

170).  Dr. Weber also noted that the plaintiff should try decreasing his blood pressure medication, as control of his blood pressure was "adequate."  (TR. 171).  On April 21, 2003, Dr. Weber, in a questionnaire, noted that the plaintiff walked with a cane and had an unsteady gait but normal motor power, reflexes, sensation, and no atrophy.  (TR. 194).  In October 2003, Dr. Weber reported that the plaintiff had a few episodes of back pain after lifting something he knew he shouldn't have.  (TR. 226).

Andrew O. Newton, M.D., a psychiatrist, examined the plaintiff several times since August 28, 2002.  (TR. 161-68, 243-46).  Dr. Newton repeatedly diagnosed chronic pain and depression.  (TR. 161-68, 234-47).  The plaintiff complained of financial problems and bouts of depression, but consistently denied suicidal thoughts.  (TR. 161-65, 167, 234-44, 246).  Yet on January 7, 2003, Dr. Newton opined, in a RFC questionnaire, that the plaintiff's mental impairment caused "moderately severe" to "severe" functional limitations. (TR. 159-60).

In April 2003, Paul Lanunziata, Ed.D., a state agency psychologist, reviewed the plaintiff's medical records and concluded that the plaintiff's mental impairments only mildly limited his activities of daily living, his social functioning, and his concentration, persistence, and pace.  Dr. Lanunziata also noted that the plaintiff had experienced no episodes of decompensation since August 28, 2002.  (TR. 190).

In November 2003, a Health South physical therapist, Louise Litzy, P.T.,

6

examined the plaintiff and assessed his functional capacity.  (TR. 208-18).

Based on her examination and testing, Ms. Litzy opined that the plaintiff was

limited to sedentary work. (TR. 208).  Ms. Litzy, however, noted that the

plaintiff tested consistently, only 68% of the time in endurance testing.  (TR.

211).  The examination also showed "rapid exchange grip testing" scores that

indicated the suspicion of "submaximal performance" by the plaintiff.  (TR.

218).  In addition, testing of the plaintiff's lifting strength was discontinued at

the plaintiff's request, even though he reported pain levels of only "mild" in one

test and "moderate" in another.  (TR. 216).

The plaintiff testified that he spent most of his time watching television

and that, although his wife did the dishes, he could.  (TR. 42).  He stated that

he used a cane at all times and a stores' electric carts when shopping.  (TR.

43-44).  The plaintiff claimed to sleep on a cot with a board under it for his

pain and the need to frequently re-position himself when sitting.  (TR. 47, 48-

49).  The plaintiff testified that he sees his psychiatrist every four weeks and

that  his depression keeps him from concentrating and from regularly bathing,

shaving, or eating.  (TR. 47).

## V.  Discussion

The plaintiff argues that the ALJ erred in rejecting the opinions of: (1) his

treating physician, (2) an examining physical therapist, (3) a state agency

consultant, and (4) his treating psychiatrist.  The plaintiff also argues that the

ALJ erred in concluding that his subjective complaints of pain were not supported by objective medical evidence.

## A.  Standard of Review.

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 432(d)(1)(A).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or

whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

### B. *Res judicata*.

As discussed above, the ALJ noted the existence of a final administrative decision, from August 27, 2002, denying applications for DIB and SSI, which the plaintiff had filed on August 14, 2001.  (TR. 16-17).  The ALJ concluded that the doctrine of *res judicata* precluded the plaintiff from re-arguing his claims on the basis of evidence that had already been considered relative to the August 27, 2002 decision.  (TR. 17).  As a result, the ALJ stated that he was only determining whether the plaintiff was disabled as of August 28, 2002, the day after the previous ALJ hearing.  *Id.*

The principles of *res judicata* apply to both administrative and judicial adjudications.  *United States v. Utah Constr. & Mining Co.,* 384 U.S. 394, 421-22 (1966).  In the social security disability context, *res judicata* applies where the same claimant has filed a previous application, based on the same issues, and where the prior determination has become final by virtue of administrative or judicial action.  20 C.F.R. § 404.957(c)(1); *Purter v. Heckler,* 771 F.2d 682, 691 (3d Cir.1985).  The Commissioner's decision to apply *res judicata* is discretionary, 20 C.F.R. § 404.957(c)(1), and generally not subject to judicial

9

review, *Califano v. Sanders,* 430 U.S. 99 (1977).  However, a *de facto*, or constructive, reopening, can nullify the Commissioner's decision to apply *res judicata.  Tobak v. Apfel* 195 F.3d 183, 186 (3d Cir. 1999).  A *de facto* reopening occurs when an ALJ, in a new proceeding, incorporates the record from a previous application and uses that record to make a decision on the merits.  *Kane v. Heckler,* 776 F.2d 1130, 1132 (3d Cir.1985).

Here, the ALJ's decision to apply *res judicata* was valid and was not nullified by a *de facto* reopening.   First, the plaintiff's previous application alleged the same disabilities and became final by virtue of this Court's decision in *Cook*, No. 3:CV-03-0959.  42 U.S.C. § 405(g).  Second, no *de facto* reopening occurred either at the hearing or in the ALJ's decision.  At the hearing, there was no testimony regarding pre-August 27, 2002 evidence.  *Id.* The plaintiff's testimony consisted of his account of the state of his health and his daily activities as of February 10, 2004, the date of the hearing.  (TR. 42-50).  Likewise, in his April 28, 2004 decision, the ALJ made clear that he was only considering the issue of the plaintiff's disability as of August 28, 2002. (TR. 25, 17).  We find, therefore, that the ALJ did not constructively reopen the previous decision; accordingly, we confine our review to the issue of the plaintiff's disability as of August 28, 2002.

### C.  Whether the ALJ erred in rejecting the opinion of the plaintiff's treating physician.

The plaintiff argues that the ALJ erred in rejecting the opinion of Dr.

Weber, his treating physician.  The plaintiff contends that the ALJ wrongly rejected Dr. Weber's (1) opinion about his work-related capacities, as expressed in a July 29, 2002 form, and (2) opinion that he was disabled, as expressed in two state welfare department forms.[3]  In *Cook* however, we considered the same argument, based on the same evidence, and found that substantial evidence supported the ALJ's decision to reject Dr. Weber's opinion.  No. 3:CV-03-0959 (Doc. No. 10, pgs. 9-10, 14-16).

We therefore confine our review to the post-August 28, 2002 evidence, which, as previously discussed, consists of office visit notes and an April 21, 2003 questionnaire.  In the questionnaire, Dr. Weber noted that the plaintiff walked with a cane and had an unsteady gait but normal motor power, reflexes, sensation, and no atrophy.  (TR. 194).  In a March 2003 visit, Dr. Weber reported that the plaintiff "look[ed] well" and that his pain control was "good."  (TR. 171).  In October 2003, she noted that the plaintiff had a few episodes of back pain after lifting something he knew he shouldn't have.  (TR. 226).  These records constitute substantial evidence supporting the ALJ's decision to reject Dr. Weber's opinion that the plaintiff was limited to only sedentary work.  (TR. 22).

---

[3]

Dr. Weber filled out a Pennsylvania Department of Welfare Employability Assessment form on August 1, 2001, in which she indicated that the plaintiff was disabled through August 1, 2002.  (TR. 252-53).  Dr. Weber filled out another welfare form on June 25, 2002, in which she indicated that the plaintiff was permanently disabled.  (TR. 250-51).

The plaintiff argues that Dr. Weber's opinion is corroborated by a November 2003 opinion from a physical therapist.  (Doc. No. 9 at 5).  As discussed below, however, the ALJ rejected that opinion and substantial evidence supports the ALJ's decision.

### D.  Whether the ALJ erred in rejecting the opinion of the consulting physical therapist

The plaintiff argues that the ALJ erred in rejecting the opinion of a Health South examiner who found, based on a functional capacity test, that the plaintiff was only capable of sedentary work.  (TR. 22).  In rejecting the opinion, the ALJ cited a "clear lack of effort" during the test on the plaintiff's part, noting that the plaintiff had tested "consistently" only 68% of the time.  (TR. 22, 211).  The ALJ noted that the plaintiff had also performed inconsistently in a previous Health South test; the examiner who administered that test had opined that the plaintiff was capable of light work.  (TR. 22).  The fact that Ms. Litzy's examination also revealed inconsistent and potentially submaximal performance is substantial evidence supporting the ALJ's decision to reject Ms. Litzy's opinion.  (211, 218).

In addition, because Ms. Litzy, as a physical therapist, is not an "acceptable medical source," the ALJ is not required to give her opinion controlling weight.  *See* 20 C.F.R. §§ 404.1513, 416.913 (identifying acceptable medical sources as only licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified

speech-language pathologists).

### E.  Whether the ALJ erred in rejecting the opinion of the consulting physician.

*Res judicata* bars us from considering the plaintiff's argument that the ALJ erred in rejecting the opinion of the state agency consultant, Dr. Samad. Dr. Samad has not re-examined the plaintiff since August 28, 2002.  We will not, therefore, disturb this Court's previous conclusion that substantial evidence supported the ALJ's decision to reject Dr. Samad's opinion.  *Cook*, No. 3:CV-03-0959 (Doc. No. 10, p. 16).

### F.  Whether the ALJ erred in rejecting the opinion of the plaintiff's treating psychiatrist.

The plaintiff argues that the ALJ erred in rejecting the opinion of Dr. Newton, his treating psychiatrist.  Once again, *res judicata* precludes the review of pre-August 28, 2002 evidence.  In *Cook*, we recommended, and the district court adopted, that substantial evidence supported the ALJ's rejection of Dr. Newton's opinion, as based on his July 2002 assessment of the plaintiff that included diagnoses of a pain disorder, a depressive disorder, and anxiety disorder, and a borderline disorder, and a GAF score of 40.  No. 3:CV-03-0959 (Doc. No. 10, pgs. 10-11, 19-20).  Here, the plaintiff attempts to make the same argument, using the same evidence, which failed in the prior decision.

We have also previously considered the import of Dr. Newton's January

7, 2003 RFC assessment.[4]  In *Cook*, the plaintiff presented Dr. Newton's RFC assessment as new evidence.  We determined both that there was no good cause to support a remand for its' introduction, and that, even if there was good cause, the assessment was immaterial as it was unlikely to alter the ALJ's decision.  No. 3:CV-03-0959 (Doc. No. 10, pgs. 22-23).  We stated that the RFC assessment was not supported by Dr. Newton's treatment notes nor other objective medical evidence and was, as a check-off form, "weak evidence at best."  *Id.* at 23.  *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993).

Nothing in Dr. Newton's most recent progress notes leads us to believe that our conclusion in *Cook* was wrong.  Turning to the evidence from Dr. Newton that was not previously considered in *Cook*, which consists of progress notes from office visits, we also find substantial evidence to support the ALJ's decision.  (TR. 20, 161-68, 243-46, 159-60).  The ALJ noted that the plaintiff's visits to Dr. Newton did not involve counseling, but were simply twenty minute check-ups during which Dr. Newton monitored the plaintiff's medications and briefly discussed his mental status.  (TR. 20, 161-68, 243-46).  As previously discussed, Dr. Newton reported bouts of depression but found that the plaintiff was doing well with medication and that his sleep,

---

[4]

As the Commissioner points out, Dr. Weber's name was inadvertently substituted for Dr. Newton's in the Report and Recommendation, which the district judge adopted.  *See Cook*, No. 3:CV-03-0959, 10-11, 22-23 (referring to the January 7, 2003 RFC assessment as being done by Dr. Newton in one section and Dr. Weber in another).

appetite, and concentration were normal.  *Id.*  Accordingly, the ALJ rejected Dr. Newton's January 7, 2003 opinion that the plaintiff's mental impairment caused "moderately severe" to "severe" functional limitations, finding it "out of line" with Dr. Newton's own medical records.  (TR. 22, 159-60).

In addition, the state psychologist, Dr. Lanunziata, Ed.D., who reviewed the plaintiff's medical records, concluded that the plaintiff's mental impairments only mildly limited his activities of daily living, social functioning, concentration, persistence, and pace, and caused no episodes of decompensation. (TR. 190).   These findings contradicted Dr. Newton's opinion about the plaintiff's functional limitations and also indicated that the plaintiff did not meet the criteria for presumptive disability based on his depression.  *See* 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.04 (B) (stating that to meet the requirements for a presumptive disability under Listing 12.04, affective disorders, the plaintiff must demonstrate either 1) marked restriction of activities of daily living 2) marked difficulties in maintaining social functioning, 3) deficiencies of concentration, persistence or pace, or 4) repeated episodes of decompensation).

**G.  Whether the ALJ erred in concluding that the plaintiff's subjective complaints of pain were not supported by objective medical evidence.**

Finally, the plaintiff argues that the ALJ erred in concluding that his complaints of pain were not supported by objective medical evidence.  The

plaintiff contends that, on the contrary, his complaints were supported by Dr. Weber's, Dr. Newton's, and Dr. Samad's opinions.

As the plaintiff correctly notes, "[a]n ALJ must give serious consideration to a claimant's subjective complaints of pain, even where those complaints are not supported by objective evidence." *Ferguson v. Schweiker,* 765 F.2d 31, 37 (3d Cir.1985).   Yet subjective complaints, without more, do not in themselves constitute a disability. *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984).  The Regulations warn that claims of pain "will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged." 20 CFR § 404.1529 (a).

Here, the plaintiff's subjective complaints were not borne out by the relevant, post-August 28, 2002, medical records. The plaintiff specifically argues that the findings of Dr. Weber, his treating physician, Dr. Newton, his treating psychiatrist, and Dr. Samad, the consulting physician, support his subjective complaints.  As previously discussed, however, we will not consider Dr. Samad's opinion, having previously done so in *Cook*, No. 3:CV-03-0959. Dr. Weber's relevant office visit notes indicate that she found no sensory or reflex changes and no atrophy. (TR. 21).  Dr. Newton's progress notes reflect that the plaintiff has a pain disorder and depression, but that his cognition, thought processes, and insight are not impaired.  (TR. 161-68).  Significantly,

16

as discussed above, substantial evidence supports the ALJ's decision to reject Dr. Newton' opinion about the severity of the functional limitations caused by the plaintiff 's mental impairment. Thus, we find that substantial evidence supports the ALJ's determination that the plaintiff's subjective complaints of pain are not supported by objective medical evidence.

## VI. Conclusion

On the basis of the foregoing, it is recommended that the plaintiff's appeal of the decision of the Commissioner, (Doc. No. 1), be **DENIED.**

S/ Malachy E. Mannion
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Dated:** January 9, 2006